IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CT-3008-FL

| | | |
|---|---|---|
| UMAR ADEYOLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DR. EDAVALLY REDDY, JENNIFER | ) | |
| ADKINS, MS. BUNN, and UNITED | ) | |
| STATES OF AMERICA | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6) by defendants United States of America ("United States"), Jennifer Adkins ("Adkins"), and Ms. Bunn ("Bunn") (DE 27) and Dr. Edavally Reddy ("Reddy") (DE 44). Also pending are plaintiff's motions for entry of default (DE 31) and default judgment (DE 37) as to defendant Reddy. The issues raised are ripe for ruling.

## STATEMENT OF THE CASE

Plaintiff, a former federal inmate proceeding pro se, commenced this action by filing complaint on November 17, 2021,[2] asserting claims for violations of his civil rights pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. On September 22, 2022, plaintiff filed his first amended complaint as of right. Therein, plaintiff alleges defendants were

---

[1] The court constructively amends the caption to reflect dismissal of John and Jane Does on August 26, 2022.

[2] Plaintiff initially filed this action in the United States District Court for the Middle District of North Carolina, which transferred the case to this court pursuant to 28 U.S.C. §§ 1404(a), 1406(a).

deliberately indifferent to his serious medical needs by denying medical treatment for multiple sclerosis ("MS"), in violation of the Eighth Amendment to the United States Constitution. He also asserts negligence claim against defendant United States pursuant to the FTCA. Individual defendants, Reddy, Adkins, and Bunn, were healthcare professionals at the Federal Medical Center in Butner, North Carolina during the relevant time period. As relief, plaintiff seeks compensatory and punitive damages.

Defendants now move to dismiss plaintiff's claims on numerous grounds. First, defendants assert the court lacks personal jurisdiction on the basis of insufficient process and insufficient service of process. Second, they argue the constitutional claims should be dismissed for failure to state a claim and where qualified immunity bars these claims. Finally, defendant United States argues the court lacks subject matter jurisdiction over the FTCA claim based on plaintiff's failure to exhaust administrative remedies. In support of its motion, defendants United States, Adkins, and Bunn rely upon declaration of Kelly Forbes, paralegal specialist with the Federal Bureau of Prisons ("FBOP"), and plaintiff's custody records.

Plaintiff responded in opposition to both motions, relying upon his personal affidavit, United States Postal Service ("USPS") tracking information for FTCA claim letter, USPS article regarding tracking numbers, his medical records, records regarding service of the complaint and summons, and news article describing new medication for MS. Defendants replied. In support of its reply, defendants United States, Adkins, and Bunn rely upon declaration of Mone't Hurey, an FBOP legal assistant, with exhibits including administrative tort claim filed by plaintiff and the FBOP's responses.

2

In addition, plaintiff filed "Rule 56(c) motion disputing defendants material facts" in opposition to defendant Reddy's motion to dismiss. Therein, plaintiff argues genuine disputes of material fact preclude entry of summary judgment in defendants' favor. In support, plaintiff places reliance on his personal affidavit and statement of facts. Defendant Reddy responded in opposition, and plaintiff replied.

Finally, plaintiff moves for entry of default as to defendant Reddy, relying on his personal affidavit. Plaintiff also filed motion for default judgment as to defendant Reddy, to which defendant Reddy responded, relying on his personal affidavit.

## STATEMENT OF FACTS

The facts alleged in plaintiff's operative amended complaint may be summarized as follows. In July 2018, during his federal criminal proceedings, plaintiff notified the United States District Court for the Western District of New York that he had been diagnosed with MS. (Am. Compl. (DE 19) at 4).[3] The court "ordered [p]laintiff to serve his sentence in a prison that provides treatment and support for complex medical needs." (Id.). The FBOP then "designated . . . plaintiff to Butner Federal Medical Center ["FMC-Butner"]." (Id.).

Plaintiff self-reported to FMC-Butner on February 11, 2019. (Id.). As an inmate, plaintiff had "no ability to schedule medical appointments on his own" and was "completely dependent on defendants to arrange for medical care and treatment for his [p]rimary [p]rogressive [MS]." (Id. ¶¶ 17, 18). Due to his MS diagnosis, plaintiff was "classified as a . . . Care Level 3 inmate who has a complex, and usually chronic, medical condition and requires frequent clinical

---

[3] There is some dispute in the record as to the medical status of plaintiff's MS diagnosis. However, for purposes of this order, the court assumes that plaintiff has MS as alleged in the complaint.

3

contacts to maintain control or stability of their condition, or to prevent hospitalization or complications." (Id. at 4).

On February 25, 2019, plaintiff was transported to medical appointment with Dr. F. Lee Hartsell III ("Hartsell"), a neurologist with Duke Neurology, but Hartsell "was not able to provide an assessment because [FMC-Butner] provided [only] a Lumbar MRI for MS analysis." (Id. ¶ 19). "Hartsell advised [FMC-Butner] of his neurological assessment and treatment plan," including that plaintiff had "likely MS and associated walking instability, lumbago, and overlapping lumbar disc degenerative disease" and plaintiff "[m]ay benefit from long term MS [medications] but need[s] reimaging." (Id.). Hartsell then recommended "repeat MRI [b]rain, C-spine and T-spine [and] [f]ollow up in three months." (Id.). In addition, "Hartsell requested that [FMC-Butner] redo the MRI" because defendants Reddy and Adkins failed to provide Duke Neurology with the appropriate records necessary to diagnose and treat MS. (Id.).

On April 10, 2019, plaintiff was "sent to Duke to receive a comprehensive neurological evaluation and interpretation of MRI studies." (Id. ¶ 20). The neurological assessment, however, could not be completed because FMC-Butner again sent the wrong MRI images. (Id.). Dr. Casey Farrin ("Farrin"), the Duke neurologist, reported that she was "unable to verify a diagnosis of MS due to incomplete records, but [plaintiff's] examination could certainly be consistent with a diagnosis of MS." (Id.). Farrin also recommended "repeat brain, cervical and thoracic spine MRIs [to be] performed" on plaintiff to obtain "a better sense of which disease modifying therapies would be appropriate for" plaintiff. (Id.).

On April 17, 2019, the FBOP's utilization review committee determined that the treatment plan recommended by the Duke neurologists was "ill advised and clinically inappropriate and

4

medically unnecessary." (Id. ¶ 21). Two days later, plaintiff complained to a physical therapist that he was experiencing "significant pain [and] significant ambulation problems causing him to stumble frequently." (Id. ¶ 22). On April 29, 2019, FMC-Butner medical staff performed new brain and cervical MRIs on plaintiff that detected "demyelinating disease ([MS]), predominantly involving the brainstem at cerebellum" as well as "an enhancing lesion[,]" "non-enhancing lesions in the medulla," and "a new enhancing lesion" at plaintiff's spine. (Id. ¶ 23). Defendant Reddy reviewed the findings from the MRIs May 3, 2019, and reported plaintiff would be followed up by neurology. (Id. ¶¶ 23, 24).

On August 19, 2019, plaintiff informed defendant Bunn that he was experiencing significant pain while walking, tremors, and violent muscle spasms and "pleaded to be returned to Duke Neurology to receive treatment because these symptoms were signs" of an MS relapse. (Id. ¶ 25). Defendant Bunn responded three days later, informing plaintiff that "a neurological consultation was pending but would not occur until Duke University received confirmation [MRI] studies of brain, thoracic and cervical to determine and provide appropriate [MS] disease modifying treatment." (Id. ¶ 26). On August 27, 2019, plaintiff requested that defendant Bunn explain why third MRI was necessary, and that she provide FMC-Butner's standard of care for treating individuals with MS including its "process for scheduling appointments, tests, and treatments" to treat MS. (Id. ¶¶ 27–28). Defendant Bunn, however, refused to respond to plaintiff's inquiry and failed to "provide prompt . . . medical attention and follow-up care for [his] serious medical condition." (Id.). Plaintiff contacted defendant Bunn again two days later, "plead[ing] . . . for immediate urgent care to address [the] painful neurological attacks he was"

5

experiencing. (Id. ¶ 29). Defendant Bunn allegedly "refused to respond and intervene to prevent further injury and irreparable harms." (Id.).

On September 3, 2019, plaintiff "again pleaded" with defendant Bunn for immediate medical care, information on FMC-Butner's standard of care for MS treatment, and the proper process for "coordinating care, appointments and treatment" but Bunn "refused to respond, provide treatment assistance, or explain." (Id. ¶ 30). Plaintiff next informed defendant Bunn October 21, 2019, "that he was experiencing significant pain . . . because of MS," requested an explanation as to why plaintiff needed a third MRI prior to receiving care, and shared with defendant Bunn that he had identified active lesions in his brain and spinal cord after reviewing his previous MRI. (Id. ¶ 31). Plaintiff "[c]omplained that no one ha[d] advised him on treatment to slow progression or provide [p]laintiff symptomatic care while in [F]BOP's care." (Id.).

On or about November 13, 2019, FMC-Butner staff "sent [plaintiff] to Dr. Ricky Olson ["Olson"], a neurosurgeon." (Id. ¶ 32). Olson concluded that there was "multiple demyelinating plaque throughout the cervical cord[.]" (Id. ¶ 34). He[4] recommended "a referral to a neurology [specialist] to see if . . . any of the newer drugs might have an impact on [plaintiff's] slowly progressing [MS]." (Id. ¶ 35). Although defendant Reddy reviewed Olson's consultation report December 1, 2019, plaintiff "was not taken to an outside neurologist to receive disease modifying treatment for [MS]." (Id. ¶¶ 35–36). Instead, plaintiff "was transferred to Cumberland Federal Correctional Institution Satellite Camp with active lesions and inflammation in his brain and spine"

---

[4] Plaintiff also refers to a report completed by Dr. Tilley regarding his MS, but the context of these allegations suggests this was a scrivener's error and plaintiff meant to refer to Dr. Olson's final recommendation. (See Am. Compl. (DE 19) ¶¶ 34–35 (referring to "his report" in a manner that suggests this is Dr. Olson's report as opposed to a report from a new physician)).

6

some date between April 6, 2020, and April 20, 2020.  (Id. ¶ 36); (see DE 39-1 at 1).  Plaintiff

does not allege that defendants had further involvement in his medical care following his transfer.

## COURT'S DISCUSSION

A.     Motions for Entry of Default

Turning first to plaintiff's motions for entry of default as to defendant Reddy,[5] Federal

Rule of Civil Procedure 55(a) provides that entry of default is appropriate "[w]hen a party against

whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Courts

have "discretion, which must be liberally exercised, in entering [default] judgments and in

providing relief therefrom."  United States. v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982).  Here,

even if service of process was effective as to defendant Reddy and he failed to respond to the

complaint by the original deadline, he has not "failed to plead or otherwise defend."  Defendant

Reddy has entered an appearance, responded in opposition to the motion for entry of default, and

filed a motion to dismiss.

Moreover, the court would set aside entry of default even if entered by the clerk.  See Fed.

R. Civ. P. 55(c).  When deciding whether to set aside default, a court should consider factors such

as whether the moving party has a meritorious defense, whether it acts with reasonable promptness,

the personal responsibility of the defaulting party, the prejudice to the adverse party, whether there

is a history of dilatory action, and the availability of sanctions less drastic than entry of default.

Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 205 (4th Cir. 2006).  The United States

Court of Appeals for the Fourth Circuit has "repeatedly expressed a strong preference that, as a

---

[5]     Plaintiff filed the instant motion for default judgment while his motion for entry of default was pending.
Where default judgment may not be considered prior to the entry of default, the court construes the motion for default
judgment as a second motion requesting entry of default pursuant to Rule 55(a).  See Fed. R. Civ. P. 55.

7

general matter, defaults be avoided and that claims and defenses be disposed of on their merits."

Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010). Here, defendant Reddy has a meritorious defense for the reasons set forth below, he asserts he was not personally responsible for the default, and he acted promptly in seeking to cure the alleged default. (See, e.g., DE 41). If default had been entered, upon proper motion, the court would have found good cause to set it aside. Fed. R. Civ. P. 55(c).

B. Motions to Dismiss

1. Standard of Review[6]

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id. When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond,

_____

[6] The court does not reach defendants' arguments regarding defects in service of process, and thus does not include the governing standards for motions to dismiss under Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), or 12(b)(5).

<u>Fredericksburg & Potomac R. Co. v. United States</u>, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party in such case "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." <u>Id.</u>

A complaint states a claim under Rule 12(b)(6) if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).[7] In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 255 (4th Cir. 2009).

In addition, when a party is proceeding pro se, pleadings should be "liberally construed" and they are "held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir. 1978). <u>Erickson</u>, however, does not undermine the "requirement that a pleading contain more than labels and conclusions." <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 n.5 (4th Cir. 2008).

    2.    Analysis

        a.    FTCA Claim

Defendant United States argues plaintiff failed to exhaust administrative remedies with respect to the FTCA claim for medical negligence. The FTCA waives the United States' sovereign immunity for "claims arising out of torts committed by federal employees." <u>Ali v. Fed. Bureau of Prisons</u>, 552 U.S. 214, 217–18 (2008). An FTCA plaintiff must first present the tort

---

[7]     Internal citations and quotation marks are omitted from all citations unless otherwise specified.

claim to the appropriate federal agency and receive notice of denial of the claim by that agency

before filing a civil action in federal court. The FTCA provides in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). Section 2675(a)'s presentment requirement is a jurisdictional prerequisite

to the institution of a tort action under the FTCA. McNeil v. United States, 508 U.S. 106, 111,

113 (1993); Plyler v. United States, 900 F.2d 41, 42–43 (4th Cir. 1990). The administrative

regulations provide that a claim is presented "when a Federal agency receives from a

claimant . . . an executed Standard Form 95 or other written notification of an incident." 28

C.F.R. § 14.2(a). The notice must "sufficiently describ[e] the injury to enable the agency to begin

its own investigation." Ahmed v. United States, 30 F.3d 514, 516–17 (4th Cir. 1994).

Here, plaintiff filed one administrative claim pursuant to the FTCA regulations. (See DE

40-1). The statement of claim, made February 22, 2020, alleges that staff at FCC-Butner lost

property belonging to plaintiff which he valued at $412.45. (See id. at 1).[8] The FBOP

acknowledged receipt of the administrative claim March 10, 2020 (see DE 40-2), and denied the

---

[8] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

claim September 30, 2020, because plaintiff failed to "provide any evidence that the [FBOP] was responsible for any loss" of personal property. (DE 40-3).

Plaintiff's complaint, however, asserts an FTCA claim premised on inadequate medical care. (Am. Compl. (DE 19) ¶¶ 43–65). Under North Carolina law, a negligence claim requires proof of "(1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." Bridges v. Parrish, 366 N.C. 539, 541 (2013); Camalier v. Jeffries, 340 N.C. 699, 706 (1995). Plaintiff's administrative statement of claim did not allege any facts suggesting a claim or injury based on medical negligence. (See DE 40-1 at 1–2); Ahmed, 30 F.3d at 516–17 (requiring that the notice sufficiently describe the underlying facts and the injury). The only "injury" described in the administrative claim is an alleged loss of personal property. (See DE 40-1 at 1). This prior claim does not satisfy the exhaustion requirements of the FTCA because it did not provide "cause [for] the agency to investigate" the claim under the standards of the FTCA, or "sufficient notice to enable the government to evaluate its exposure so far as liability is concerned." Ahmed, 30 F.3d at 516–17; Keene Corp. v. United States, 700 F.2d 836, 842 (2d Cir. 1983).

Relying on his personal affidavit, plaintiff avers that he filed additional administrative claim that defendant United States fails to address in its motion. (See DE 36-1). Plaintiff proffers a certified USPS mail tracking number that allegedly corresponds to the administrative claim submitted to the FBOP relating to plaintiff's personal injury claims. (See DE 36 at 2). According to plaintiff, he mailed the certified letter to the FBOP on April 21, 2020, while he "was on home confinement." (DE 36-1 ¶ 2). He "diligently followed the progress of the letter through the USPS website" and "the website confirmed that the letter was received by the [FBOP] on April 21, 2020." (Id. ¶ 6). Therefore, plaintiff avers that he mailed the claim from his home in New

11

Jersey on April 21, 2020, and that it was received that same day at the FBOP mid-Atlantic regional office in Maryland. (See id. ¶¶ 2, 6); FBOP Mid-Atlantic Regional Office, https://www.bop.gov/locations/regional_offices/mxro/ (last visited Feb. 14, 2024) (showing the office is located in Maryland).

Plaintiff argues the instant motions to dismiss should be denied and that the court should afford him opportunity for discovery regarding the allegedly lost administrative claim. This argument suggests plaintiff is moving for relief under Federal Rule of Civil Procedure 56(d). In the context of Rule 56 motions for summary judgment, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: defer considering the motion or deny it." Fed. R. Civ. P. 56(d)(1). "Rule 56(d) mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition." Pisano v. Strach, 743 F.3d 927, 931 (4th Cir. 2014). Although relief under Rule 56(d) is "broadly favored and should be liberally granted," the court "may deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." Goodman v. Diggs, 986 F.3d 493, 501 (4th Cir. 2021); McCray v. Maryland Dep't of Transp., Maryland Transit Admin., 741 F.3d 480, 484 (4th Cir. 2014).

Assuming without deciding that Rule 56(d) should apply in the context of a Rule 12(b)(1) motion where matters outside the pleadings are considered, plaintiff has failed to establish that the court should defer ruling on the motion. The government avers in sworn filings that it conducted review of its administrative records and did not find any administrative tort claims filed by plaintiff alleging medical negligence. (Forbes Decl. (DE 29); Hurey Decl. (DE 40)). No amount of

12

discovery is going to change the fact that the FBOP did not receive the administrative tort claim. And under the FTCA, plaintiff must establish not only that he mailed the tort claim, but that the government received it.   See Rhodes v. United States, No. 92-2106, 1993 WL 212495, at *1 (4th Cir. June 15, 1993) (under the FTCA's presentment requirement, "mailing alone is not enough; there must be evidence of actual receipt"); see also Drazan v. United States, 762 F.2d 56, 58 (7th Cir. 1985) (same); Bailey v. United States, 642 F.2d 344, 347 (9th Cir. 1981) (same).

Moreover, plaintiff could not have sent an administrative tort claim by certified mail in April 2020, "while on home confinement," because he was still incarcerated during that time. (Compare DE 36-1 ¶ 2 with Forbes Decl. (DE 29) ¶ 4 & Ex. 1 at 1 (noting release date was July 15, 2020)); see also United States v. Adeyola, No. 16-CR-138 (W.D.N.Y. July 14, 2020) (order granting compassionate release from custody in July 2020).[9]   Plaintiff cannot obtain discovery on the basis of an affidavit that is blatantly contradicted by the record.   Cf. Scott v. Harris, 550 U.S. 372, 381 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").   As a result, plaintiff has not produced sufficient evidence to warrant discovery or deferral of ruling on the administrative exhaustion issue.

Defendants further argue that any FTCA claim premised on negligence by defendant Reddy cannot proceed where he is an independent contractor hired by the FBOP, not an FBOP employee.   (See DE 28 at 3; see also DE 45 at 10).   Plaintiff does not dispute defendant Reddy's status as an independent contractor.   "By its express terms, the FTCA does not provide for liability

---

[9]      The April 2020 timeframe cannot be a clerical error where plaintiff repeatedly references that he mailed the tort claim or that it was received on April 21, 2020.   (DE 36-1 ¶¶ 2, 6, 8, & p. 3).

of the United States for the acts or omissions of independent contractors." Williams v. United States, 50 F.3d 299, 305 (4th Cir. 1995). "Because the United States is not liable for the acts or omissions of independent contractors, sovereign immunity has not been waived; and the doctrine therefore operates to bar suits against the United States." Id. "If the independent contractor . . . exception[] appl[ies] to an FTCA claim, then the presiding court lacks subject matter jurisdiction to hear the claim." Krembel v. United States, 837 F. App'x 943, 947 (4th Cir. 2020). Thus, any negligence claim brought pursuant to the FTCA premised on conduct by defendant Reddy also must be dismissed pursuant to Rule 12(b)(1).

In sum, plaintiff failed to exhaust administrative remedies under the FTCA, and the court therefore lacks jurisdiction to consider the FTCA claim. See Ahmed, 30 F.3d at 516–17. The court also lacks jurisdiction over any FTCA claims premised on actions by defendant Reddy. Accordingly, defendant United States's motion is granted in that part seeking dismissal of plaintiff's FTCA claims.

    b.  Bivens Claims

Defendants argue that plaintiff's constitutional claims are not cognizable under Bivens in light of recent Supreme Court law. See, e.g., Ziglar v. Abbasi, 582 U.S. 120, 134–35 (2017); see also Egbert v. Boule, 596 U.S. 482, 491–92 (2022). In Bivens, the Supreme Court recognized a damages remedy against federal officers for Fourth Amendment violations where the officers searched a residence and arrested the plaintiff without a warrant or probable cause, and used excessive force during the search. 403 U.S. 388, 397 (1971). Since Bivens was decided in 1971, the Supreme Court has authorized a damages remedy against federal officers for constitutional violations in only two additional contexts: 1) a Fifth Amendment equal protection claim alleging

14

gender discrimination in congressional employment, see Davis v. Passman, 442 U.S. 228 (1979); and 2) an Eighth Amendment claim by a federal prisoner alleging prison officials were deliberately indifferent to his serious medical needs by failing to treat his asthma, see Carlson v. Green, 446 U.S. 14 (1980).  See also Earle v. Shreves, 990 F.3d 774, 778 (4th Cir. 2021).  The Court, however, "has declined to countenance Bivens actions in any additional context."  See Tun-Cos v. Perrotte, 922 F.3d 514, 521 (4th Cir. 2019) (collecting cases).

The Supreme Court recently explained that Congress is better positioned than the courts to extend Bivens liability to new contexts not previously recognized, and instructed federal district and appellate courts to conduct a rigorous analysis before authorizing a Bivens remedy in any new context without congressional approval.  See Egbert, 596 U.S. at 497 n.3 ("[R]ecognizing a Bivens cause of action is an extraordinary act that places great stress on the separation of powers."); see also Tun-Cos, 922 F.3d at 521–23.  The court must conduct the following inquiry to determine whether a Bivens remedy is available:

> First, courts must inquire whether a given case presents a "new Bivens context." If the context is not new . . . then a Bivens remedy continues to be available.  "But if the context is new, then courts must, before extending Bivens liability, evaluate whether there are special factors counselling hesitation in the absence of affirmative action by Congress.  If any such special factors do exist, a Bivens action is not available."

Earle, 990 F.3d at 778–79 (quoting Tun-Cos, 922 F.3d at 522–23).

The first step of this inquiry asks whether the case presents a "new context" for Bivens liability because it is "different in [any] meaningful way" from the three prior cases in which the Court has provided a Bivens remedy.  Abbasi, 582 U.S. at 138; Tun-Cos, 922 F.3d at 522–23. "A radical difference is not required."  Tun-Cos, 922 F.3d at 523.  The Supreme Court, "without

15

endeavoring to create an exhaustive list," noted that a case might differ in a meaningful way based on:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous <u>Bivens</u> cases did not consider.

<u>Abbasi</u>, 582 U.S. at 140.

Here, plaintiff alleges defendants Reddy, Adkins, and Bunn failed to provide adequate medical care for his MS and obstructed plaintiff from critical information regarding his treatment, in violation of the Eighth Amendment. Plaintiff asserts that his case "has all essential similarities" with the facts of <u>Carlson</u>. (DE 36 at 8). Like in <u>Carlson</u>, plaintiff alleges an Eighth Amendment violation based on deliberate indifference to serious medical needs. <u>See</u> 446 U.S. at 16–23 & n.1. However, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." <u>Hernandez v. Mesa</u>, 140 S. Ct. 735, 743 (2020). Additionally, following the Court's decision in <u>Egbert</u>, "a plaintiff cannot justify a <u>Bivens</u> extension based on parallel circumstances with <u>Bivens</u>, <u>Passman</u>, or <u>Carlson</u> unless he also satisfies the analytic framework prescribed by the last four decades of intervening case law." 596 U.S. at 501.

Plaintiff's factual allegations are significantly different from the facts in <u>Carlson</u>. <u>See Mays v. Smith</u>, 70 F.4th 198, 203 (4th Cir. 2023) ("[E]ven quite minor differences between a proposed claim and the claims in the three existing <u>Bivens</u> cases can amount to a new context.") There, the inmate's estate alleged that prison officials acted "against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack,

16

administered contra-indicated drugs which made his attack more severe, [and] attempted to use a respirator known to be inoperative." Carlson, 446 U.S. at 16 n.1. By contrast, plaintiff alleges defendants did not arrange for timely referrals to neurological specialists at outside hospitals or complete the necessary imaging studies the specialists needed in order to evaluate plaintiff. (Am. Compl. (DE 19) ¶¶ 11–36). Moreover, plaintiff acknowledges that the FBOP's utilization review committee declined to approve one of the treatment plans for his MS. (Id. ¶ 21).

Thus, plaintiff's Bivens claims present "meaningful differences" from Carlson where they implicate FBOP policies and practices for referring plaintiff to outside medical providers and which imaging studies should be conducted prior to referrals for MS treatment, and the standards for the utilization review committee to approve treatment plans recommended by the outside providers. See Bulger v. Hurwitz, 62 F.4th 127, 138 (4th Cir. 2023) (concluding Eighth Amendment claims that implicate "organizational policies, administrative decisions, and economic concerns inextricably tied to inmate transfer and placement determinations" present a new context); see also Tate v. Harmon, 54 F.4th 839, 846 (4th Cir. 2023).

The claims also are distinct from Carlson where in that case the medical providers ignored an imminent risk to plaintiff's health in circumstances where specific, known treatment should have been administered. See Carlson, 446 U.S. at 16 n.1. Here, however, plaintiff's claims arise in the context of a complex and chronic neurological disease and the actions the FBOP took when attempting to diagnose and treat this condition. As noted above, these assessments required referrals to outside medical specialists and review by the utilization review committee. And where plaintiff suffered from a chronic condition requiring specialized, long-term care from outside providers, his claims are distinct from the delayed care at issue in Carlson. These

17

differences establish plaintiff's claims arise in a new context. See Bulger, 62 F.4th at 138 ("A new context may arise if even one distinguishing fact has the potential to implicate separation-of-powers considerations" and thus "even claims challenging the adequacy of medical care may involve the same right and mechanism of injury as in Carlson but still present different contexts"); see also Abbasi, 582 U.S. at 147–48 (concluding plaintiff's claims in Correctional Servs. Corp. v. Malesko, 534 U.S. 61 (2001) were meaningfully different from Carlson on similar grounds); Washington v. Fed. Bureau of Prisons, No. 5:16-3913-BHH, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022) ("Whereas the Court in Carlson fashioned a Bivens-type remedy to make right a grave constitutional wrong, plaintiff's Bivens claims here risk transforming this court into an ad hoc medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if any, cross the threshold into constitutional injury."). In short, "a modest extension is still an extension." Abbasi, 582 U.S. at 147.

Having concluded plaintiff's claims present a new context, the second step of the inquiry asks whether "there are any special factors that counsel hesitation" in extending Bivens. Hernandez, 140 S. Ct. at 743. This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Abbasi, 582 U.S. at 136. A special factor counseling hesitation "must cause a court to hesitate before answering that question in the affirmative." Id. Extending Bivens to a new context is a "disfavored judicial activity" where Congress is better suited to determine whether a new damages remedy should be authorized. Id. at 135. Thus, "[i]f any such special factors do exist, a Bivens action is not available." Tun-Cos, 922 F.3d at 523; see

also Earle, 990 F.3d at 779. "Even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy." Egbert, 596 U.S. at 491.

The Supreme Court has emphasized two special factors that counsel hesitation in extending Bivens to a new context: 1) whether an "alternative remedial structure is available" and, most critically, 2) whether extending Bivens would violate separation-of-powers principles. Abbasi, 582 U.S. at 136–37; see also Tate, 54 F.4th at 844 ("[T]he Court has directed that the special factors inquiry must center on separation-of-powers principles."). Additional relevant special factors include, inter alia, 1) "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies"; 2) whether Congress has previously enacted legislation in the area, "making it less likely that Congress would want the judiciary to interfere" 3) whether a damages remedy is necessary to deter future similar violations; 4) whether the claim addresses broader policy questions delegated to an administrative agency; and 5) whether national security interests are at issue. Abbasi, 582 U.S. at 136–43 (citing Wilkie v. Robbins, 551 U.S. 537, 561–62 (2007); Malesko, 534 U.S. at 73–74; FDIC v. Meyer, 510 U.S. 471, 485–86 (1994); United States v. Stanley, 483 U.S. 669, 679 (1987); Chappell v. Wallace, 462 U.S. 296, 302 (1983); and Bush v. Lucas, 462 U.S. 367, 385–88 (1983)).

Here, plaintiff has an alternative remedial program available to him in the form of the FBOP's administrative remedy program ("ARP"). Earle, 990 F.3d at 780; see also Malesko, 534 U.S. at 74 ("Inmates . . . also have full access to remedial mechanisms established by the [F]BOP, including . . . grievances filed through the [F]BOP's [ARP]."). Plaintiff can obtain meaningful

relief from the program.  See Earle, 990 F.3d at 780.  The fact that a damages remedy is not available through the ARP does not change this analysis.  See Tun-Cos, 922 F.3d at 526–27 ("The plaintiffs are correct that the protections provided by the INA do not include a money damages remedy and often do not redress constitutional violations that occur apart from removal proceedings.  But this misses the point, for the relevant question is not what remedy the court should provide for a wrong that would otherwise go unredressed but instead whether an elaborate remedial system should be augmented by the creation of a new judicial remedy.").  The existence of the foregoing alternative remedies is a special factor counselling hesitation.  Id.  Moreover, the fact that Congress has legislated in the area of prison litigation through the Prison Litigation Reform Act of 1995, but did not provide for a damages remedy against federal correctional officials in that legislation also counsels against creating a damages remedy in this context.  See Mays, 70 F.4th at 206.

The court next turns to whether separation of powers principles counsel against extending a Bivens remedy to plaintiff's claims.  In the context of constitutional claims filed by federal prisoners or former federal prisoners challenging policies and medical decisions related to long-term chronic conditions, the Judiciary is ill suited, "absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  Abbasi, 582 U.S. at 136.  As noted above, such care requires consultation with medical specialists, complex decisions regarding providing constitutionally effective care in a cost-effective manner, and issues related to the security and orderly administration of prison transfers for outside appointments.  Congress is better positioned to weigh the costs and benefits of authorizing a damages remedy in this new context.  See id.; see also Washington, 2022 WL 3701577, at *6 (concluding special

factors counseled hesitation in similar context where "[t]he provision of chronic medical care is a specialized activity requiring a high degree of training and qualification. In the prison context, the provision of such care is made all the more multifaceted because it must coincide with the security demands and inherent limitations of the custody setting").   Separation-of-powers principles thus counsel strongly against recognizing a new <u>Bivens</u> remedy for plaintiff's claims.   <u>See</u> <u>Mays</u>, 70 F.4th at 202–03 ("If there is <u>any</u> reason to think that Congress might be better equipped to create a damages remedy, then the court must decline to extend <u>Bivens</u> to a new context.").

In sum, the court finds that plaintiff's claims present new <u>Bivens</u> contexts, and that special factors counsel against extending a damages remedy for these claims.   Plaintiff therefore fails to plead cognizable <u>Bivens</u> claims.

Finally, to the extent plaintiff alleges state law medical negligence claim against defendant Reddy, the court declines to exercise supplemental jurisdiction over this claim.   <u>See</u> 28 U.S.C. § 1367(c)(3) (providing district court "may decline to exercise supplemental jurisdiction over a pendent state law claim if . . . the district court has dismissed all claims over which it has original jurisdiction.").   As the Supreme Court has explained, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."   <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966).   Moreover, plaintiff does not allege an independent basis for federal jurisdiction over any state law claim against defendant Reddy.   (<u>See</u> DE 19 ¶¶ 2–6 (asserting jurisdiction only under 28 U.S.C. § 1331); <u>Pinkley, Inc. v. City of Frederick, MD.</u>, 191 F.3d 394, 399 (4th 1999) ("[T]he facts providing the court jurisdiction must be affirmatively alleged in the complaint."); <u>see also</u> <u>Wiener v. AXA Equitable Life Ins. Co.</u>, 58 F.4th 774, 780 (4th Cir. 2023)

(noting that jurisdictional issues must be raised by the court sua sponte). Accordingly, the court will dismiss any state law claim against defendant Reddy without prejudice.

## CONCLUSION

Based on the foregoing, defendants' motions to dismiss (DE 27, DE 44) are GRANTED and plaintiff's motions for entry of default, default judgment, and for relief under Rule 56(c) (DE 31, DE 37, DE 50) are DENIED. Plaintiff's FTCA claims and any state law claims against defendant Reddy are DISMISSED without prejudice for want of jurisdiction. The clerk is DIRECTED to close this case.

SO ORDERED, this the 21st day of February, 2024.

LOUISE W. FLANAGAN
United States District Judge

22